Filed 3/12/14  In re T.D. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re T.D. et al., Persons Coming Under the Juvenile Court Law. | |
| | D064459 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3555) |
| v. | |
| T.D. et al., | |
| Defendants and Appellants. | |

APPEALS from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Dismissed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant Mother.

William Henry Hook, under appointment by the Court of Appeal, for Defendant and Appellant Father.

Office of the County Counsel, Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

## I.

## INTRODUCTION

T. D. (Mother) and To. D. (Father) each appeal from an order entered after a 12-month review hearing in this juvenile dependency matter involving their two children. In the order, the trial court found that the San Diego County Health and Human Services Agency (the Agency) had provided reasonable reunification services to the parents, directed the Agency to continue to provide reunification services, and found a substantial probability that their children would be returned to their physical custody by the 18-month date. (See Welf. & Inst. Code, § 366.21, subd. (g)[1] [stating that at the expiration of the ordinary period for the provision of reunification services a trial court may continue the case for up to six months if the court "finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent or legal guardian and safely maintained in the home within the extended period of time or that reasonable services have not been provided to the parent or legal guardian"].)

On appeal, the parents contend that the trial court erred in finding that the Agency offered or provided reasonable reunification services. We conclude that because the trial court continued the reunification period and took no action that was adverse to the

_____

[1]    All subsequent statutory references are to the Welfare and Institutions Code, unless otherwise specified.

2

parents based on its reasonable services finding, the parents were not aggrieved by the trial court's order. The appeals must therefore be dismissed. (See *Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1154 (*Melinda K.*) ["there is no right to appeal a finding that reasonable reunification services were provided to the parent or legal guardian unless the court takes adverse action based on that finding, because, in the absence of such action, there is no appealable order resulting from that finding"].)

## II.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

On May 30, 2012, the Agency filed two petitions pursuant to section 300 on behalf of the parents' three-year-old child and their 10-month-old child. The petition on behalf of the three-year-old alleged that the child had sustained a fractured left humerus in May 2012, and that the injury required care and treatment for which the parents failed and refused to provide for a period of at least nine days. A second petition alleged that the 10-month-old suffered from failure to thrive, and that the parents failed to provide adequate care for the child's condition.

In June 2012, the Agency filed amended petitions with respect to each child. As to the three-year-old, the Agency added a second count alleging that Father's mental illness had rendered him incapable of caring for the child and that the mother had failed and been unable to protect the child. With respect to the 10-month-old, the Agency added a second count identical in all material respects to the second count of the petition

---

[2]     We limit our factual and procedural background to that which is relevant to our discussion of the basis for our dismissing the appeals.

3

pertaining to the three-year-old child. The Agency then dismissed the failure to thrive count.

The court declared the children dependents, removed physical custody from the parents, and placed the children in licensed foster home care. The parents were ordered to comply with their case plans, which included utilizing various reunification services that the Agency was directed to provide.

In January 2013, the Agency prepared a six-month review report. In the report, the Agency indicated that the parents had been only moderately successful in utilizing various reunification services. The services included case management services provided through an Independent Living Skills worker, in-home parenting instruction, therapy, and visitation. The report recommended that the court direct the Agency to provide the parents with another six months of reunification services.

The court held a contested six-month review hearing on February 5, 2013. The court admitted the six-month review report in evidence and heard testimony from the Agency's social worker and the paternal grandmother. At the conclusion of the hearing, the court found that a return of the children to parental custody would be detrimental and that the Agency had provided reasonable reunification services.[3] The court further found that the parents had made "some progress" with their case plan, continued the children in out-of-home care and set another review hearing in six months.

---

[3] The court stated that it was "not an easy call" to find that the Agency had provided reasonable services, noting that "clearly, therapy referrals were given late."

4

In its 12-month review report, the Agency stated that the parents had "not demonstrated enough stability and progress to show that they would be able to provide a safe environment for their children." The Agency recommended that the court terminate reunification services and set a section 366.26 hearing in order to select and implement a permanent plan for the children.

The court held a contested 12-month review hearing on August 7, 2013. The court admitted the 12-month review report in evidence and heard testimony from the Agency's social worker and Father. Counsel for each parent argued that the Agency had failed to provide reasonable reunification services.[4] In the alternative, both parents' counsel argued that the parents had made substantial progress on their respective case plans.

At the conclusion of the hearing, the court entered an order in which it found that return of the children to parental custody would be detrimental, but that there was a substantial probability of return by the 18-month date. The court found that the Agency had provided the parents with reasonable reunification services and ordered the Agency to continue to provide reunification services until the 18-month review hearing, which would be held in December 2013. The court also set a hearing for the following week to further address the reunification plan.

On August 14, the court held a hearing concerning the reunification plan. At that hearing, the court summarized the state of the reunification plan as follows:

---

[4]     Specifically, Father's counsel argued that the Agency had failed to provide Father with an anger management program or adequate therapy. Mother's counsel argued that the Agency had failed to provide Mother with adequate therapy.

"Back on August 7th, 2013, the court ordered the services [to] continue [until] the 18-month [review hearing]. . . . [T]his matter was continued just to solidify a case plan for both parents so there was no question as to what was expected. [¶] My understanding is the case plan will include individual therapy for both parents, and if they both agree, and it's acceptable, they will then enter conjoint, and outside of that, the case plan . . . is agreeable to the parties."

Counsel for both Mother and Father indicated that the parents agreed to the reunification plan.

Each of the parents timely appealed from the August 7, 2013 order.

III.

DISCUSSION

A.    *The parents are not aggrieved by the trial court's reasonable services finding*

Mother and Father contend that the trial court erred in finding that the Agency offered or provided them with reasonable reunification services. We conclude that the parents are not aggrieved by the trial court's finding.

1.    *Governing law*

In *Melinda K., supra*, 116 Cal.App.4th at pages 1152-1153, the court outlined the general principles of law governing appeals in the dependency context:

" '[T]he scope of a party's right to appeal is completely a creature of statute.' [Citation.] The Legislature has complete control over the right to appeal and may restrict, alter or even abolish that right. [Citation.] To govern appeals in dependency proceedings, the Legislature has enacted Welfare and Institutions Code section 395, which provides: 'A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment . . . .' A dispositional order constitutes an appealable judgment." (Fn. omitted.)

6

Ordinarily, only an *aggrieved* party may appeal from a judgment or appealable order. (See, e.g., *Canaan Taiwanese Christian Church v. All World Mission Ministries* (2012) 211 Cal.App.4th 1115, 1123; Code Civ. Proc., § 902 ["Any party *aggrieved* may appeal" (italics added)].) "[A]s a general rule, a party is not aggrieved and may not appeal from a judgment or order entered in its favor." (*Friends of Aviara v. City of Carlsbad* (2012) 210 Cal.App.4th 1103, 1108.)

In *In re K.C.* (2011) 52 Cal.4th 231, 236, the Supreme Court explained that the requirement that a party be aggrieved by the order at issue applies fully to appeals in dependency proceedings:

> "[O]nly a person aggrieved by a decision may appeal. [Citations.] An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision. [Citations.] These rules apply with full force to appeals from dependency proceedings."

" 'For purposes of appellate standing in dependency cases, a parent is aggrieved by a juvenile court order that injuriously affects the parent-child relationship.' [Citation.]" (*In re T.G.* (2010) 188 Cal.App.4th 687, 692.)

In *Melinda K.*, a mother appealed from an order entered after a six-month review hearing at which the court found that the Department of Children and Family Services had provided her with reasonable reunification services. (*Melinda K.*, *supra*, 116 Cal.App.4th at p. 1152.) The *Melinda K.* court concluded that the mother was not aggrieved by the trial court's finding because the court had ordered a continuation of

7

reunification services, and no other adverse consequences[5] resulted from the court's finding. (*Ibid*.) The court reasoned:

> "When the juvenile court makes a finding that reasonable services were provided, a parent or legal guardian may not be immediately impacted by that finding. Here, for example, mother was not aggrieved by the finding that reasonable reunification services were provided, given that services were continued for at least another six months and no negative consequence flowed from the reasonable services finding. We do not believe that section 395 permits a party to appeal a finding in the absence of an adverse order resulting from that finding. Accordingly, we conclude that there is no right to appeal a finding that reasonable reunification services were provided to the parent or legal guardian unless the court takes adverse action based on that finding, because, in the absence of such action, there is no appealable order resulting from that finding." (*Id*. at pp. 1153-1154.)

2.      *Application*

In this case, Mother and Father were entitled to a continuation of the reunification period to the 18-month date if the court found *either* that (1) there was a substantial probability that their children would be returned to their physical custody by the 18-month date *or* (2) the Agency failed to offer them reasonable services. (§ 366.21, subd. (g)(1).) The trial court extended the reunification period based on its finding that there was a substantial probability of return by the 18-month date. Thus, the parents obtained the same result that they would have obtained if the court had found that the Agency had not offered or provided them reasonable services.

---

5      With respect to potential adverse consequences of the court's finding, the *Melinda K.* court stated, "[O]ur conclusion would be different if the court had found that the child's return to mother would be detrimental to her because mother had not availed herself of services provided when mother contended that the Department had failed to provide her with reasonable services." (*Melinda K*., *supra*, 116 Cal.App.4th at p. 1154.)

8

Further, the trial court did not take any *other* adverse action based on its finding that the Agency had provided reasonable services to the parents. For example, as in *Melinda K.*, the trial court in this case found that the parents were in compliance with their case plans and also found a substantial probability that their children would be returned to their physical custody by the next review hearing. (*Melinda K., supra*, 116 Cal.App.4th at p. 1156.) In addition, as in *Melinda K*, the parents do not contend on appeal that the court would have ordered the children returned to them at the hearing at which the court made the reasonable services finding. (*Id*. at p. 1155.) In short, the parents were not denied anything to which they would have been entitled if the trial court had found that the Agency had failed to offer reasonable reunification services. Accordingly, as in *Melinda K.*, the parents are not aggrieved by the trial court's reasonable services finding. (See *Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1201 [" 'And as to the question who is the party *aggrieved,* the test . . . seems to be the most clear and simple that could be conceived. *Would the party have had the thing, if the erroneous judgment had not been given?* If the answer be ye[s], then the person is the "party aggrieved." But his right to the thing must be the immediate, and not the remote consequence of the judgment, had it been differently given.' [Citation.]"].)

We acknowledge that the court in *In re T.G.*, *supra*, 188 Cal.App.4th 687 criticized the reasoning of *Melinda K.,* in part on the ground that "a finding [of reasonable services at the time of the six-month review] can put the interests of parents and children in reunification at a significant procedural disadvantage." (*In re T.G.*, *supra*, at p. 695.) However, the bulk of the procedural disadvantages to which *In re T.G* referred do not

9

apply in this case. For example, the *In re T.G.* court stated that it would be "significantly more difficult for a parent to either reunify with a child or to satisfy the heightened showing required for a continuation of reunification services [after the 12-month review] if the parent was not provided with reasonable services during the first six months of the reunification period." (*Ibid*.) In this case, as discussed above, the trial court continued reunification services beyond the 12-month date.

Further, while we agree with the *In re T.G* court that there is a possibility that a parent might suffer future harm "based in part on an erroneous finding of reasonable services" (*In re T.G., supra,* 188 Cal.App.4th at p. 695) and that such a finding may not be reviewed "by way of an appeal from a subsequent adverse order" (*id*. at p. 696), in our judgment, a parent who may suffer a *potential* adverse consequence in the *future* has not had his or her "rights or interests . . . injuriously affected by the decision in an immediate and substantial way." (*In re K.C*., *supra*, 52 Cal.4th at p. 236 [defining an aggrieved person].) Accordingly, we conclude that the "procedural disadvantage," theory of aggrievement outlined in *In re T.G. supra*, at page 695 is not a sufficient basis on which to conclude that the parents in this case may appeal the trial court's reasonable services finding.

Finally, we reject the parents' contention that *Christopher D. v. Superior Court* (2012) 210 Cal.App.4th 60 (*Christopher D.*) demonstrates that they were harmed by the

10

trial court's order.[6]  In *Christopher D.,* this court concluded that the trial court's erroneous reasonable services finding constituted prejudicial error.  (*Id.* at p. 75.)  However, in *Christopher D.*, after finding that the parent had *not* made substantial progress with his case plan, the court *terminated* services and scheduled a section 366.26 selection and implementation hearing.  (*Christopher D.*, *supra*, at pp. 67-68.)  Thus, the parent in *Christopher D.* was clearly harmed by the reasonable services finding because the trial court *terminated* services based in part on that finding.  (*Id.* at p. 75.)  In this case, in contrast, as discussed above, the trial court ordered the Agency to *continue* to provide reunification services to the 18-month date.  Accordingly, the holding in *Christopher D.* does not mean that Mother and Father were aggrieved by the trial court's order in this case.[7]

---

[6]     In its respondent's brief, the Agency argues that any error committed by the trial court with respect to its reasonable services finding was "harmless" because the "court continued reunification services to the 18-month date."  The parents, in turn, each argue that the trial court's purported error was prejudicial, citing *Christopher D.*  In our view, the issue is properly framed as one pertaining to whether the parents are aggrieved by the trial court's ruling, rather than whether any trial court error was harmless.  In any event, *Christopher D.* is distinguishable for the reasons stated in the text.

[7]     In *Melinda K., supra,* 116 Cal.App.4th at page 1157, the court concluded that "a petition for writ of mandate is the appropriate method by which to challenge a finding made by a juvenile court at a review hearing which does not result in an appealable order."  Neither parent has asked this court to construe his or her appeal as a petition for writ of mandate, and under the circumstances of this case, we decline to exercise our "discretionary power to treat an unauthorized appeal as a petition for an extraordinary writ."  (*In re Ricky H.* (1992) 10 Cal.App.4th 552, 563-564.)

11

## IV.

## DISPOSITION

The appeals are dismissed.

_____

AARON, J.

WE CONCUR:

_____

NARES, Acting P. J.

_____

O'ROURKE, J.